IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VAUGHN WILLIAMS,                     :
                                     :
          Plaintiff                  :
                                     :   CIVIL NO. 1:CV-12-0118
     vs.                             :
                                     :   (Judge Caldwell)
MICHAEL WENEROWICZ, *et al.*,        :
                                     :
          Defendants                 :


*M E M O R A N D U M*

I.     *Introduction*

          The pro se plaintiff, Vaughn Williams, filed this action pursuant to 42 U.S.C. §

1983 arising from events that transpired during his incarceration at the Frackville State

Correctional Institution (SCI-Frackville), in Frackville, Pennsylvania.[1] Defendants are the

following past and present Pennsylvania Department of Corrections (DOC) employees who

worked at SCI-Frackville during the relevant time: Michael Wenerowicz, former

Superintendent; Robert Collins, current Superintendent; Anthony Kovalchik, Deputy

Superintendent; Thomas Derfler, former Deputy Superintendent; Captain Robert Dusel,

retired; Lieutenant James Popson; Corrections Officer (CO) Gerald Kodack; CO Adam

Sanborn and CO Christopher Weidow.

          Presently before the court is Defendants' Motion to Dismiss.  (Doc. 10, Mot. to

Dismiss).  For the reasons that follow, Defendants' motion will be granted in part and

denied in part.

---

[1]  Williams was released from custody on September 2, 2012, and presently resides in
Atlantic City, New Jersey.  (Doc. 15, Notice of Change of Address).

II.    *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).  This inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The court may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 1969 n. 8, 167 L.Ed.2d 929 (2007).  Instead, the court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  *Id.* at 556, 127 S.Ct. at 1966.

"Pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Jackson v. Div. of Dev. Disabilities*, 394 F. App'x 950, 951 n.3 (3d Cir. 2010)(nonprecedential)(quoted case omitted). Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted).  *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend.  *See Phillips v. Cnty of Allegheny*, 515 F.3d

224, 245-46 (3d Cir. 2008)(citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

However, dismissal without leave to amend is justified on grounds of bad faith, undue

delay, prejudice, or futility. *Alston,* 363 F.3d at 235-36.

        With these principles in mind, we set forth the background of this litigation, as

Plaintiff alleges it.

III.    *Background*

        A.    *Events Leading to the January 16, 2010, Assault*

        In December 2009, Williams was placed in SCI-Frackville's Restricted

Housing Unit (RHU). (Doc. 1, Compl. ¶ 43). On January 2, 2010, at approximately 9:00

p.m., CO Kodack approached Williams' RHU cell door and questioned him about a

grievance he filed regarding the loss of his thermals. (*Id.* ¶ 15). CO Kodack was angry that

Williams had "gone over [his] head" before talking to him about the issue and told him next

time it happened he and his cellmate (Eli) "would not get fed." (*Id.*) On the evening of

January 3, 2010, when CO Sanborn and CO Kalce (a non-defendant) were passing out

evening meal trays, CO Sanborn told Williams that CO Kodack said he and his "celly don't

eat today because of all your complaining." (*Id.* ¶ 16). CO Sanborn and CO Kalce left the

unit without feeding Williams or his cellmate. (*Id.*) Later Williams told Sgt. Braim (a non-

defendant) that CO Kodack directed CO Sanborn not to feed him or his cellmate today. (*Id.*

¶ 17). Sgt. Braim left the unit and later returned to speak with Williams. He told Williams

that CO Sanborn and CO Kalce said they did not feed them because they were sleeping.

(*Id.*) Indicating that he found this hard to believe, Sgt. Braim "provided both Plaintiff and his

cellmate their meal trays." (*Id.*)

On January 11, 2010, CO Kodack told Williams that he knew what happened on January 3, 2010, and stated "We're gonna kick your ass when we get a the chance". (*Id.* ¶ 18). He added that "We stick together around here, and just know you won't be eating like everybody else." (*Id.*) A few hours later, CO Weidow stopped by Williams' cell and told him that he knew what happened with COs Kodack, Sanborn and Kalce. When Williams asked for a grievance form, CO Weidow became angry and refused to give him one, saying "I'm going to fuck your little ass up the first chance I get and you can forget about eating when I hand out the trays." (*Id.*)

Over the next four days Williams told Capt. Dusel, Lt. Popson, Supt. Wenerowicz, Deputy Supt. Derfler, and Deputy Supt. Kovalchik "that Defendants Koda[c]k and Weidow threatened to assault him and that Koda[c]k, Sanborn, Kalce and Weidow were plotting to deny him food trays." (*Id.* ¶ 20). Williams asked these individuals to intervene by either reassigning the involved staff members or removing him from the unit. (*Id.*) "Each defendant stated they would look into it and [that] Plaintiff would be hearing a reply from them or Defendant Popson." (*Id.*)

On January 16, 2010, Williams did not have a cellmate. (*Id.* ¶ 22). That day COs Kodack, Sanborn and Weidow did not give Plaintiff a meal tray. (*Id.*) However, in the process of collecting the other inmates' trays, COs Sanborn and Weidow opened the "wicket" on Williams' cell door.[2] (*Id.* ¶ 23). "Plaintiff put his left arm out [of] the wicket and stated that he wanted to see Defendant Popson, or Defendant Dusel." (*Id.*) CO Weidow

---

[2] "A wicket slot is a small hinged slot in a cell door through which food trays and other items may be passed to inmates." *McCullon v. Brouse*, No. 3:10-CV-1541, 2012 WL 4504504, *2 n.3 (M.D. Pa. Sept. 7, 2012).

told Williams he should have thought about that before filing his grievance. When Williams requested a meal tray, both CO Sanborn and CO Kodack refused. (*Id.*) Suddenly CO Sanborn "lunged" toward Plaintiff, grabbed his left arm and started bending his wrist. Meanwhile, CO Weidow also grabbed Plaintiff's left arm and began "slamming the medal (sic) wicket on Plaintiff's arm." (*Id.* ¶ 24). Williams shouted for the officers to stop and asked CO Kodack to instruct them to stop. (*Id.*) CO Kodack took no action and watched the assault. (*Id.*)

After the assault, Williams had "deep lacerations, cuts, scrapes on his left bicep, and left forearm, and suffered excruciating pain to his left shoulder and left wrist." (*Id.* ¶ 26). When Williams asked COs Kodack, Sanborn and Weidow for medical assistance, they all refused. (*Id.* ¶ 27).

Later that evening Williams told Capt. Dusel that he had been assaulted, denied a meal and denied medical care for his injuries as well as his prescribed Benadryl. (*Id.* ¶¶ 29 and 31). He asked Capt. Dusel to review the RHU security tapes of the incident and speak with inmates Torres and Amir Doe who "saw everything that took place" and would corroborate his version of the events. (*Id.* ¶ 29). Capt. Dusel said that he would not review the tape, provide him medical care or food, "and [that] he believed his staff." (*Id.*)

Early the next morning, Williams filed Grievance No. 304178 regarding the assault. (*Id.* ¶ 33). On or about January 26, 2010, Lt. Gaudreau spoke to Williams about the January 16, 2010, assault. (*Id.* ¶ 34). Lt. Gaudreau called medical staff to photograph and treat his wounds. (*Id.*)

On February 2, 2010, Williams filed a DC-135A[3] with Deputy Supt. Derfler, advising him that he was still being harassed and retaliated against by CO Weidow and requested a separation. (*Id.* ¶ 35). Deputy Supt. Derfler responded on February 16, 2010, advising Williams that he would pass the form to SCI-Frackville's Security Captain, Capt. Clark. (*Id.*)

On February 21, 2010, Williams wrote to the Pennsylvania State Police (PSP) requesting that criminal charges be filed against the officers involved in the January 16, 2010, assault. (*Id.* ¶ 36). PSP Captain Dante Orlandi responded, indicating he forwarded Williams' letter to the DOC's Office of Professional Responsibility (OPR) and Capt. Clark. (*Id.* ¶ 37). Soon thereafter, Capt. Clark interviewed Williams and stated he would review the videotape of the incident. (*Id.* ¶ 38).

On May 20, 2010, Lt. Popson responded to Williams' grievance regarding the assault (No. 304178). All relief was denied and no action was taken. (*Id.* ¶ 39). Superintendent Wenerowicz affirmed Lt. Popson's denial of the grievance. (*Id.* ¶40).

B.    *Loss of Legal Materials*

On July 8, 2010, Williams was escorted to the RHU property room by CO Weidow and CO Kalce. (*Id.* ¶ 41). At that time he learned that "all his criminal case discovery, legal transcripts, and post conviction papers prepared by a legal aid were missing." (*Id.*) This was the first time since Williams' admission to the RHU in December 2009 that he reviewed his legal files maintained in the RHU property room. (*Id.* ¶ 43).

---

[3] A DC-135A is also known as an Inmate's Request to Staff Member, or Inmate Request, form.

Plaintiff filed Grievance No. 327256 regarding his missing property. (*Id.* ¶ 44). It was denied by Lt. Popson on July 28, 2010. (*Id.*) Williams then filed an appeal to Supt. Collins complaining that Lt. Popson's investigation into the missing property was incomplete. (*Id.* ¶ 45). Supt. Collins agreed with Williams and remanded the matter. The grievance was again denied and Williams "received no relief, nor was he reimbursed for the missing property." (*Id.*)

On October 28, 2010, CO Weidow told Williams that CO Kodack "was responsible for his missing property." (*Id.* ¶ 46). All RHU staff members have access to the inmate property in the RHU and RHU Annex. (*Id.* ¶ 47). On November 16, 2010, Williams spoke with Superintendent Collins in the RHU regarding his missing property and "the fact that their (sic) has been a pattern of inmate missing property" in the RHU. (*Id.* ¶ 48). Although Superintendent Collins said he would look into it, he failed to take any corrective action or conduct any follow up on the issue. (*Id.*)

C. *Loss of Holiday Bag*

On November 16, 2010, Williams sent a Request to Staff Member form to Superintendent Collins inquiring whether RHU inmates would receive the "Holiday Christmas bag that contains food items" that is distributed to inmates in general population. (*Id.* ¶ 49). On December 9, 2010, Williams spoke to Superintendent Collins regarding the Holiday bags while he was making rounds in the RHU. (*Id.* ¶ 50). Superintendent Collins advised Williams that Holiday bags would be sent to him and "staff would hold it in Plaintiff's personal property in the RHU property room until he was released from the RHU." (*Id.*) Williams again told Superintendent Collins that the RHU property room was not secure and

-7-

that property was stolen or destroyed by staff. (*Id.*) Superintendent Collins assured Williams that his Holiday bag would be "safely secured." (*Id.*) On December 22, 2010, Williams received Confiscation Slip No. A704117 indicating that his Holiday bag was placed in his property in the RHU property room. (*Id.*)

Approximately six months later, on June 14, 2011, Williams was transferred to SCI-Huntingdon. (*Id.* ¶ 51). During his mandatory property inventory upon intake at SCI-Huntingdon, he discovered his Holiday bag was missing from the property sent from SCI-Frackville. (*Id.*) Williams filed Grievance No. 371397 regarding the loss of property. (*Id.* ¶ 51). Lt. James denied the grievance noting that Holiday bags were not distributed in the RHU. (*Id.* ¶ 52). On appeal, Deputy Superintendent Kovalchik responded that while RHU inmates did received Holiday bags in past, they did not this year. (*Id.* ¶ 53). Williams appealed the grievance to final review. (*Id.* ¶ 54). Chief Grievance Officer, Dorina Varner noted that "her investigation found that the Holiday Bags were in fact issued and placed in inmate personal property RHU". (*Id.*) Even though she confirmed the Holiday bags were distributed to RHU inmates, and Williams had a Confiscation slip indicating his Holiday bag was placed in his RHU property, Ms. "Varner denied any form of reimbursement." (*Id.*)

D.    *Plaintiff's Claims*

Williams asserts the following claims: (1) a retaliation claim against Kodack, Sanborn and Weidow for the exercise of his First Amendment right to file a prison grievance when they assaulted him, denied him medical treatment, and confiscated his personal property; (2) a retaliation claim against Defendants Wenerowicz, Kovalchik, Derfler, Dusel and Popson for failing to stop Kodack, Sanborn and Weidow from retaliating

against him;[4] (3) an Eighth Amendment excessive-force claim against Sanborn and Weidow for the January 16, 2010, wicket incident; (4) an Eighth Amendment failure-to-protect claim against "[a]ll the Defendants" who were aware of Kodack, Sanborn and Weidow's pattern of aggressive and/or abusive behavior against inmates and failed to take remedial action (Wenerowicz, Kovalchik, Derfler, Dusel and Popson); (5) state-law claims for assault and battery against the defendants arising out of the January 16, 2010, event; (6) an Eighth Amendment medical claim for the failure to treat his medical needs following the wicket incident against Kodack, Sanborn and Weidow; (7) a due process claim for the loss of his personal property (legal materials and Holiday bag); and (8) a state-law claim for conversion of the legal materials and Holiday bag. Williams seeks compensatory and punitive damages from each defendant.

IV.    *Discussion*

    A.    *Williams' Eighth Amendment Excessive-Force Claims Against CO Sanborn and CO Weider*

        Use of excessive force against an inmate violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). The core inquiry on an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, ____, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quoting *Hudson*

---

    [4] As Williams correctly noted, "the Defendants have not moved to dismiss [his retaliation claims] from the Complaint. (Doc. 12-1, Br. in Supp. Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF p. 1). Accordingly, the Williams' retaliation claim against all defendants will proceed.

*v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors, including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

Defendants move to dismiss the Eighth Amendment excessive-force claims. (Doc. 11, Mot. to Dismiss Br., ECF pp. 9-10). They contend that once CO Sanborn and CO Weider opened Williams' wicket, he "admits" to violating prison rules by placing his left arm through it. Defendants assert that the force utilized against Williams was in response to his violation of prison rules and "in an attempt to get Plaintiff's arm back inside his cell and prevent Plaintiff from harming himself or anyone else." (*Id.*, ECF p. 10).

Williams counters that there is no evidence in the record that he violated prison rules, received a misconduct for placing his arm out of the wicket, or that placing his arm through the wicket necessitated the officers' use of physical force, or that the amount of force used against him was reasonable and/or necessary. (Doc. 12-1, Pl.'s Opp'n Br., ECF p. 3).

At this stage of the proceedings, we must accept all of Williams' allegations as true. Based on the Complaint alone, Defendants cannot show that their use of force against Williams "was applied in a good-faith effort to maintain and restore discipline,"

-10-

rather than to "maliciously and sadistically" to cause Williams harm. *Hudson,* 503 U.S. at 7,

112 S.Ct. at 999. For these reasons, Defendants' motion to dismiss Williams' excessive

use of force claim against CO Sanborn and CO Weider will be denied.

      B.     *Williams' Eighth Amendment Failure-to-Protect Claims against CO*
              *Kodack, Capt. Dusel, Lt. Popson, Supt. Wenerowicz, Dep. Supt.*
              *Derfler or Dep. Supt. Kovalchik*

        To plead an Eighth Amendment failure-to-protect claim, an inmate must

demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of

serious harm," and (2) the prison official acted with "deliberate indifference" to his health

and safety. *Farmer v. Brennan*, 511 U.S. 825, 834-35, 114 S.Ct. 1970, 1977, 128 L.Ed.2d

811 (1994). A substantial risk of serious harm "may be established by much less than

proof of a reign of violence and terror," but requires more than a single incident or isolated

incidents. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). This does not require that

an inmate must suffer an assault before obtaining relief. *Id.* Prison officials exhibit

deliberate indifference when they know of, and disregard, an excessive risk to the inmate's

safety. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. "The knowledge element of deliberate

indifference is subjective, not objective knowledge, meaning that the official must actually

be aware of the existence of the excessive risk; it is not sufficient that the official should

have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

        Finally, the inmate must show that "the official's deliberate indifference

caused the harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). A corrections officer

can be held liable under the Eighth Amendment for failure to intervene in a beating "if the

corrections officer had a reasonable opportunity to intervene and simply refused to do so."

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002). Moreover, the Third Circuit has held that "neither rank nor supervisory status is a factor in assessing whether [a corrections officer] had 'a realistic opportunity to intervene.'" *Id.* at 652 (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Defendants argue that Williams' conclusory allegations, without any supporting facts, fail to demonstrate the existence of a plausible failure-to-protect claim against CO Kodack, Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kocalchik. We will address the claim as to CO Kodack first.

Based on the factual allegations in the Complaint, if true, the court finds that Williams has articulated a plausible failure-to-protect claim against CO Kodack. In the Complaint, Williams states that while CO Sanborn and CO Weider assaulted him, he shouted to CO Kodack for help. (Doc. 1, ¶ 24). Instead of instructing his fellow officers to stop assaulting Williams, CO Kodack "stood there and watched." (*Id.*) These factual allegations suggest that CO Kodack was aware of the risk of harm to Williams and elected to leave Williams in a vulnerable position that posed a significant risk of serious harm to him. Defendants' motion to dismiss the failure-to-protect claim against CO Kodack is denied.

Next, we turn to Williams' failure-to-protect claims against Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kovalchik. Defendants take issue with Williams' "bald assertion that all of the Defendants were aware of complaints against Defendants Sanborn and Weidow regarding their alleged pattern of abuse towards inmates . . . [and] that all of the Defendants were aware that

-12-

Defendant [Kodack] demonstrated a pattern of being overly aggressive and assaultive towards inmates." (Doc. 11, ECF p. 11; *see also* Doc. 1, ¶¶ 55-57). Defendants assert that Williams' allegations that the supervisory defendants' knowledge of CO Sanborn, CO Weidow and CO Kodack's patterns of abuse and assault of inmates prior to January 16, 2010, are conclusory and do not support a claim that they ignored the risk these officers posed to him.

We conclude that Williams' allegation that these Defendants failed to "take any corrective measures to protect inmates from assaults from staff once they've been informed that an inmate is in danger" is speculative and factually unsupported. (Compl. ¶ 57). In his opposition brief, Williams points to other allegations, "<u>key</u> <u>relevant</u> <u>facts</u>" that were alleged in the Complaint. (Doc. 12-1, ECF p. 5)(emphasis in original). The factual allegations he relies on are found in paragraph 20 of the "Facts" section of his Complaint. (*Id.*) Plaintiff avers that he told Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kovalchik, that "Defendants Kodak and Weidow threatened to assault him and that Kodak, Sanborn, Kalce and Weidow were plotting to deny him food . . ." (Doc. 1 ¶ 20). He states he asked each Defendant to intervene by reassigning the three officers or moving him from the RHU. (*Id.*) Each said they would "look into it" and that either they would respond to him or Lt. Popson would. (*Id.*) According to Williams, these conversations took place either two or four days before the assault. (*Id.*)

We conclude that these allegations, even if true, do not support a failure-to-protect claim under the Eighth Amendment. Here, Williams does not plead facts to meet the subjective components of a failure-to-protect claim. He does not assert that he advised

each of these defendants of CO Sanborn, CO Weidow and CO Kodack's patterns of abuse and prior assault of inmates. Further, apart from his own assertion that Sanborn, Weidow, and Kodack threatened him with the denial of food and physical harm, he offers no specific information to establish that the supervisory Defendants (Dusel, Popson, Wenerowicz, Derfler and Kovalchik) were deliberately indifferent to his safety. To the contrary, each supervisory Defendant listened to Williams' concerns and stated they would look into it. These allegations do not suggest they knew of a substantial risk of serious harm to him and disregarded the risk by failing to take reasonable measures to abate the potential harm.

Moreover, it is well established that verbal abuse of an inmate by itself does not violate the Eighth Amendment. *See Dunbar v.* Barone, 487 F. App'x 721, 723 (3d Cir 2012)(nonprecedential)(verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *see also* Mimms *v. UNICOR*, 386 F. App'x 32, 35 (3d Cir. 2010)(nonprecedential)(same). When Williams spoke to the supervisor defendants prior to the January 16, 2010, incident, he only alleges he told them of COs Sanborn, Kodack and Weidow's threats; he does not allege he told them he had been physically assaulted, denied food, or otherwise harmed by these three officers. Williams' communication of the verbal threats is inadequate to suggest that the supervisory defendants at that time were aware of an excessive risk to his safety or that the substantial risk was obvious based on Williams' statements. *Bistrian*, 696 F.3d at 367.

Accordingly, Defendants' motion to dismiss Williams' Eighth Amendment failure-to-protect claim against the supervisory Defendants (Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kovalchik) will

be granted.[5]

C.   *Assault and Battery State-Law Claims*

Claim three of Williams' Complaint is labeled "Assault and Battery." (Doc. 1, ECF p. 7).  Williams alleges that CO Sanborn and CO Weidow committed assault and battery on him during the wicket incident on January 16, 2010. (*Id.* ¶ 70).  On May 5, 2012, Williams notified the court that "pursuant to Fed. R. Civ. P. 41(a)(1)(A), Plaintiff gave notice of the dismissal with prejudice of CLAIM #3 (Assault & Battery)." (Doc. 12, Pl.'s Opp'n to Defs.' Mot. to Dismiss. Pl.'s Compl. ¶ 4).  Thus, these state-law claims will be dismissed with prejudice.

D.   *Williams' Eighth Amendment Medical Claims*

The Eighth Amendment "requires prison officials to provide basic medical treatment" for those "incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)(*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) that show deliberate indifference to a serious medical need.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  Deliberate indifference can be shown by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.*"* *Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291.  Deliberate indifference may also be present if necessary medical treatment is

_____

[5] We note that Williams has not asserted an Eighth Amendment excessive-force or related claim against Supt. Collins.

delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).

Defendants move to dismiss Williams' claims of deliberate indifference to his serious medical needs following the January 16, 2010, assault. (Doc. 11, ECF pp. 11-12). They suggest that his conclusory claims of Defendants' awareness of his need for medical care are unsupported by the factual averments of the Complaint. (*Id.*)

We disagree with Defendants. In his Complaint, Williams alleges he "suffered deep lacerations, cuts, scrapes on his left bicep, and left forearm, and suffered excruciating pain to his left shoulder and left wrist." (Doc. 1 ¶ 26). He specifically states that immediately following the altercation he requested, and was denied, medical assistance from Defendants Kodack, Sanborn, and Weidow. (*Id.* ¶ 27). He also claims that he spoke to Capt. Dusel that evening and requested medical assistance, his previously prescribed Benadryl medication, and a meal, all of which were denied by COs Sanborn, Kodack and Weidow. (*Id.* ¶¶ 29-31). Capt. Dusel failed to provide Williams any of the requested relief. (*Id.*) Williams, however, does not make any allegations that the remaining Defendants were aware of his need for medical attention, or denied or interfered with his receipt of medical care.[6]

Accordingly, the court will grant Defendants' motion to dismiss Williams' claims of deliberate indifference to his serious medical needs as alleged against Supt.

---

[6] These defendants can only be held liable under § 1983 for a deprivation of a constitutional right if they had some "personal involvement" in it. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Wenerowicz, Supt. Collins, Deputy Supt. Kovalchik, Deputy Supt. Derfler, and Lt. Popson, but deny the motion with respect to Capt. Dusel and COs Sanborn, Kodack, Weidow.

      E.     *Due Process Claim Based on the Loss of Personal Property: Legal Materials and Holiday Bag*

      The unauthorized negligent or intentional deprivation of a prisoner's property by a state official does not violate procedural due process requirements "if a meaningful post-deprivation remedy for the loss is available." *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984)). The Third Circuit has held that the DOC's grievance system constitutes an adequate postdeprivation remedy. *Monroe*, 536 F.3d at 210; *Lyons v. Secretary of Dept. of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011)(nonprecedential); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)(holding that prison's grievance program and internal review provided an adequate postdeprivation remedy to satisfy due process). Alternatively, Pennsylvania law provides an adequate remedy for intentional wrongs committed by state officials. *See Dockery v. Beard*, 2013 WL 139624, at *5 (3d Cir. Jan. 11, 2013)(nonprecedential)(state prisoner has adequate postdeprivation remedy in state tort law action for conversion); *see also Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011)(nonprecedential)(holding Pennsylvania Tort Claims Act provided an adequate post-deprivation remedy for willful deprivation of property without due process).

      Defendants argue that Williams has no due process claim for the loss of his property because he had an adequate post-deprivation remedy, as evidenced by his use of the grievance system to address the loss of his property. (Doc. 11, ECF pp. 8-9). Williams counters that he "does not have a 'meaningful post-deprivation remedy' available to

legitimately address" the loss of his property by corrections staff. (Doc. 12-1, ECF p. 10). He claims that "[i]t is well known within the PA state prison system that the DOC grievance process is a big sham and an inadequate process because the unlikely hood (sic) of the DOC finding 'themselves liable.'" (*Id.*) He states he used the grievance to challenge the loss of his property "only because he is required to under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)." (*Id.*)

Clearly, while Williams is dissatisfied with the outcome of his grievances, and believes the process unlikely to yield results favorable to himself or other inmates, he has not demonstrated any basis for us to conclude that the prison's grievance program and internal review process do not provide an adequate postdeprivation remedy. *See Austin v. Lehman*, 893 F. Supp. 448, 454 n.4 (E.D. Pa. 1995)("Of course, that Plaintiff did not prevail in this procedure [DOC's internal grievance review procedure] in no way affects the procedure's adequacy as a post-deprivation remedy.")

Given the availability of two postdeprivation remedy options, Defendants' motion to dismiss will be granted as to this claim. Moreover, because further amendment will not cure this deficiency, the claim will be dismissed with prejudice. *See Shakur,* 421 F. App'x at 135 (holding prisoner's due process claim was properly dismissed with prejudice where an adequate postdeprivation remedy was available).

F.      *State-Law Claim for Deprivation of Property*

Under 28 U.S.C. § 1367(a), when a district court exercises federal question jurisdiction over an action, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

-18-

form part of the same case or controversy under Article III of the United States Constitution." In other words, courts should exercise supplemental jurisdiction "where [the plaintiff's] state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003)(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)).

As Williams' federal due process claim for property loss will be dismissed without leave to amend, the court declines to exercise supplemental jurisdiction over his state-law claim of conversion based on the same set of facts. Accordingly, Williams' state-law property claim is dismissed, but without prejudice to pursuing it in state court.

G.    *Statute of Limitations*

The statute of limitations for section 1983 claims arising in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The limitations period begins to run from the time "when the plaintiff has a complete and present cause of action, [citations omitted], that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007)(brackets added)(internal quotation marks omitted). "Because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts." *Paluch v. Sec'y Pa. Dep't of Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011)(nonprecedential).

Under the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 2384-85, 101 L.Ed.2d 245 (1988), the Complaint was filed on January 15,

2012, when it was postmarked, *see Paluch*, 442 F. App'x at 693, even though it was not received and docketed by the Clerk of Court until January 23, 2012. According to Defendants, any claims raised by Plaintiff based on events that occurred before January 15, 2010, are barred by the statute of limitations. (Doc. 11, ECF p. 12). Specifically, Defendants assert that since "Plaintiff alleges that various Defendants threatened him on January 2, 3 and 11, 2010," any claims related to these events are time-barred. (*Id.*)

Although Williams does not oppose this argument, at this stage of the proceedings, we cannot decide the limitations defense because the statute of limitations would have been tolled while Plaintiff pursued administrative remedies, but we lack information to determine whether Williams filed grievances regarding the threats he allegedly received on those days, and if so, how long the process took.[7] The Complaint could very well have been timely if filed within two years of the exhaustion of administrative remedies. Therefore, Defendants' limitations defense is rejected at this time.

H.    *Leave to Amend*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). The court believes that any amendment of Williams' due process claim based on the loss of property claim would be futile and amendment of that claim will not be permitted. However, it is possible that the

---

[7] An inmate is not required to specifically plead or demonstrate exhaustion of administrative remedies in their complaints. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007).

deficiencies noted in this memorandum may be remedied by amendment with respect to: (1) the Eighth Amendment failure-to-protect claim against the supervisory Defendants (Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kovalchik); and (2) the Eighth Amendment medical claim against Supt. Wenerowicz; Supt. Collins, Dep. Supt. Kovalchik, Dep. Supt. Derfler and Lt. Popson. Thus, Williams will be granted twenty-one days to file an amended complaint on those claims.

If Williams decides to file an amended complaint, he is advised that it must contain the same docket number as the instant action and should be labeled "Amended Complaint." In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). In particular, Williams is advised that any amended complaint he may file supersedes the original complaint and must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1. Since any amended complaint supersedes the original complaint, Williams is advised that any claim that has survived the motion to dismiss must be alleged in the amended complaint or it will be waived.

Williams is also advised that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise and simple statements. *Id.* The allegations should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). He also shall specify the relief he seeks with regard to each claim. Williams' failure

to file an appropriate amended complaint within the required time will result in the court proceeding solely on the claims in the original Complaint that were not dismissed in the accompanying Order.

We will issue an appropriate order.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 19, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VAUGHN WILLIAMS,                    :
                                    :
        Plaintiff                   :
                                    :  CIVIL NO. 1:CV-12-0118
    vs.                             :
                                    :  (Judge Caldwell)
MICHAEL WENEROWICZ, *et al.*,       :
                                    :
        Defendants                  :


*O R D E R*

AND NOW, this 19th day of March, 2013, upon consideration of Defendants'

motion (Doc. 10) to dismiss and in accordance with the accompanying memorandum, it is

ordered that:

1.  Plaintiff's request to dismiss with prejudice his state-law
claims for assault and battery pursuant to Fed. R. Civ. P. 41 is
granted and those claims are hereby dismissed.

2.  Defendants' motion (Doc. 10) to dismiss the Complaint is
granted in part and denied in part.

3.  Defendants' motion to dismiss the excessive-force claim
against CO Sanborn and CO Weider is denied.

4.  Defendants' motion to dismiss the failure-to-protect claim
against CO Kodack is denied.

5.  Defendants' motion to dismiss the failure-to-protect claims
against Capt. Dusel, Lt. Popson, Superintendent Wenerowicz,
Deputy Superintendent Derfler and Deputy Superintendent
Kovalchik is granted.

6.  Defendants' motion to dismiss the Eighth Amendment
medical claims against CO Kodack, CO Sanborn, CO Weidow
and Capt. Dusel is denied.

7.  Defendants' motion to dismiss the Eighth Amendment
medical claims against Superintendent Wenerowicz,

Superintendent Collins, Deputy Superintendent Derfler and Deputy Superintendent Derfler and Lt. Popson is granted.

8.  Defendants' motion to dismiss Williams' due process claim for property loss is granted.  This claim is dismissed with prejudice as any amendment would be futile.

9.  The court declines to exercise supplemental jurisdiction over Williams' state-law claim for conversion and that claim is dismissed without prejudice to pursuing it in state court.

10.  Defendants' motion to dismiss based on the statute of limitations is denied.

11.  Within twenty-one (21) days from the date of this order, Plaintiff may file an amended complaint in accordance with the accompanying memorandum on the following claims: (a) the Eighth Amendment failure-to-protect claim against the supervisory Defendants (Capt. Dusel, Lt. Popson, Superintendent Wenerowicz, as well as Deputy Superintendents Derfler and Kovalchik); and (b) the Eighth Amendment medical claim against Supt. Wenerowicz; Supt. Collins, Dep. Supt. Kovalchik, Dep. Supt. Derfler and Lt. Popson.

12.  The Clerk of Court shall forward to Plaintiff  two (2) copies of this Court's prisoner civil-rights complaint form which Plaintiff shall use in preparing any amended complaint he may file.

13.  Failure to file an amended complaint as directed within the required time will result in this action proceeding solely on the claims not dismissed in this order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge